UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM QUINTANA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No.: 1:19-cv-01304-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Sam Quintana ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 9, 16, 17.)

1

record as a whole and is based on proper legal standards. Accordingly, the Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on December 20, 2014. AR 255-261, 262-267.[2] Plaintiff alleged that he became disabled March 24, 2014, due to osteoarthritis, arthritis in both hands, psoriasis throughout the body, difficulty using hands, constant pain, and limited mobility. AR 142. Plaintiff's applications denied initially and on reconsideration. AR 176-180, 182-190. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Ruxana Meyer held a hearing on December 4, 2017. AR 72. At the hearing, Plaintiff amended the alleged onset date to March 18, 2014. AR 23. ALJ Meyer issued an order denying benefits on April 30, 2018. AR 20-33. Plaintiff sought review of the ALJ's decision. The Appeals Council denied the appeal on April 9, 2019. AR 6-9. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on December 4, 2017, in Fresno, California. Plaintiff appeared with his attorney, Johnathan Pena. Stephen Schmidt, an impartial vocational expert, also appeared. AR 72.

Plaintiff testified that he lives with his sister and brother-in-law. AR 77. Plaintiff testified that he does not drive because he does not have a car, so his brother-on-law drives him. AR 77-79. Plaintiff further testified that he did not finish high school, nor did he receive a GED. AR 79-80. Plaintiff has had no vocational or educational training. AR 80.

Plaintiff testified that in September 2013 he worked for a couple of months in shipping and receiving at S&F Fuel in Arkansas. AR 80-81. The company then changed its name to Tiger Mart. AR 81. There Plaintiff worked as a manager, where he would work the register, clean pumps and bathrooms, sweep and mop floors, order products, change prices, restock the shelves, and other duties. AR 82-83. At Tiger Mart, Plaintiff was walking and standing most of the day, would lift products weighing about 25 pounds, supervised four people, and was involved in hiring and firing. AR 84.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff also testified that he worked for a motorcycle shop called American Sundiro. AR 85-86. There Plaintiff worked as a shipping and receiving clerk. AR 86. In this position, Plaintiff was walking or standing the entire workday, and lifted and carried up to 30-40 pounds at a time. AR 87-88. When asked to clarify the work by the VE, Plaintiff testified that he prepared shipping labels but did not conduct any calculations for shipping. AR 89-90. Plaintiff then testified that he worked a seasonal position for Walmart in 2013 as a shipper. AR 90.

During most days, Plaintiff testified that he does little chores like taking out the trash and sweeping and can do a little cooking. AR 90. Plaintiff's daily routine consists of watching TV, where he can only sit for short periods before needing to lay down. AR 91-92. In addition to laying down, Plaintiff's home treatment includes stretching and home exercises. AR 92. Plaintiff also takes Vicodin for the pain and it provides relief. AR 93. On top of the Vicodin, Plaintiff takes ibuprofen. AR 93. Plaintiff participated in physical therapy for his back. AR 95. Plaintiff takes injection for the pain. AR 95. Plaintiff applies a topical ointment for his psoriasis. AR 97. Plaintiff testified that he has difficulty holding shopping bags when grocery shopping, due to his arthritis. AR 99.

In response to questions from his attorney, Plaintiff testified that his arthritis of his hands has caused his fingers to become crooked. AR 99. Plaintiff also has difficulty holding on to things, his hands go numb, and he cannot use hot water when washing his hands or dishes. AR 100-01. When handling or fingering objects, Plaintiff is sometimes unable to feel the object and will drop it. AR 101. Plaintiff testified that about four times a week he has a flare up where he cannot bend his hands or fingers. AR 101. The flare ups also include a "fire" like pain, that is a six on a scale of one to ten. AR 103.

As to his back pain, Plaintiff testified that he is only able to walk a block or two, which usually takes him about an hour and a half. AR 103. Plaintiff testified that he is able to stand for about 30 minutes without a sitting or taking a break. AR 104. Plaintiff is able to sit for about 45 minutes at a time. AR 104. When grocery shopping Plaintiff is able to grab things no higher than eye level off the shelves and that weigh no more than 20 pounds. AR 104. Plaintiff further testified that he spends about four hours a day laying down or napping because of pain or fatigue. AR 104-05.

As to Plaintiff's mental impairments, Plaintiff testified that he is receiving treatment for anxiety and depression and is taking medication. AR 105. Plaintiff further testified that about two to three times a week he feels very isolated from his pain, depression, and anxiety. AR 105-06.

Plaintiff testified that after he stopped working at Walmart in 2013, he applied for other jobs. AR 106. However, in March 2014, Plaintiff's pain became so severe he could not have worked if a job had hired him. AR 106-07.

Following questioning by Plaintiff's attorney the ALJ asked additional questions. AR 107. Plaintiff testified that he sees Dr. Schlief once a month to have his medications refilled and to discuss Plaintiff's symptoms. AR 107. Plaintiff further testified that in 2013 his fingers began bending, he believed his fingers were broken but his doctor diagnosed him with arthritis. AR 108-09.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE classified Plaintiff's past work as medium work as performed. AR 111. The ALJ also asked the VE hypotheticals. For the first hypothetical, the ALJ asked the VE to assume an individual with the same age, education, and work experience as claimant who can occasionally lift 20 pounds, frequently lift or carry 10 pounds, stand or walk for six out of eight hours, sit six out of eight hours, perform occasional climbing, stooping, crawling, and balancing, perform frequent kneeing and crouching, and perform frequent handling and fingering bilaterally. AR 111. The VE testified that such a person could perform the past work of manager as defined in the national economy but could not perform the work as performed. AR 111. The ALJ then asked the VE to consider the same individual but with no past work. AR 112. The VE testified that such a person could perform some work, including cashier, cleaner, and electronics worker. AR 112.

For the second hypothetical, the ALJ asked the VE to consider an individual who can lift less than 10 pounds occasionally, can sit for 30 minutes, can stand for 20 minutes, can stand and walk for less than two hours. AR 112. The individual must walk for 10 minutes every 30 minutes, take unscheduled breaks every 30 minutes for 10 minutes. AR 112. The individual can perform occasional stooping, crouching, squatting, climbing of ladders, can grasp, reach and do fine manipulation bilaterally 50 percent of the workday, can reach overhead 25 percent of the workday, would be off

1  task 25 percent of the workday, and only capable of low stress work. AR 112. The VE testified that
2  such a person could not perform any work in the national economy. AR 113.

3  Plaintiff's counsel then asked the VE a hypothetical. AR 113. Counsel asked the VE to
4  consider an individual similar to the individual in the ALJ's first hypothetical but consider the
5  individual could stand or walk for two hours in an eight-hour workday, and could handle and finger
6  bilaterally only occasionally. AR 113. The VE testified that such an individual could not perform the
7  Plaintiff's past work or any other work in the national economy. AR 113.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act from March 18, 2014 through the date of her decision. AR 23. Specifically, the ALJ found that Plaintiff met the insured status requirements through December 31, 2018. AR 25. He had not engaged in substantial gainful activity since the alleged onset date. AR 25. The ALJ identified degenerative disc disease of the lumbar spine and psoriasis as severe impairments. AR 25. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 28.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work as follows: lift 20 pounds occasionally and lift and carry 10 pounds frequently; sit for 6 hours in an 8-hour workday; stand or walk for 6 hours in an 8-hour workday; and could occasionally climb, balance, crawl, and stoop; and frequently kneel, crouch, handle, and finger bilaterally. AR 28. With this RFC, the ALJ found that Plaintiff could perform his past relevant work as a store manager. AR 31. The ALJ found that there were also other jobs that existed in the national economy that the Plaintiff could perform including: cashier, cleaner, and electronics worker. AR 32-33. The ALJ therefore concluded that Plaintiff had not been under a disability from March 18, 2014 through the date of this decision. AR 33.

///

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

///

///

///

# DISCUSSION[3]

Plaintiff argues that (1) the ALJ failed to follow the regulations in weighing the medical opinion evidence provided by treating source Dr. Schlief and examining source Dr. Bonilla, and therefore the conclusion that Plaintiff's mental impairments are not severe is unsupported, and (2) the RFC is unsupported by substantial evidence because the ALJ rejected the assessment of the Plaintiff's treating physician in favor of her own lay interpretation of the record. (Doc. No. 17 at 8, 12.)

## A. The ALJ Properly Evaluated Plaintiff's Mental Residual Functional Capacity

Plaintiff alleges that the ALJ erred in affording discounted weight to examining provider Dr. Bonilla, and little weight to the opinion of treating source, Dr. Schielf, despite the providers having largely consistent opinions. Therefore, the ALJ's finding at step two that the Plaintiff's anxiety and depression are non-severe was made in error. (Doc. No. 17 at 8-9.)

At step two of the five-step analysis, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. § 416.920(c). An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § § 416.920(c), 416.921(a). The evaluation at step two is a de minimis screening device to dispose of groundless claims. *Bowen v. Yukert*, 482 U.S. at 153–154 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). An impairment is not severe if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotations and citations omitted).

In determining whether a claimant's mental impairment is severe, an ALJ is required to evaluate the degree of mental limitation in four broad areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. If the degree of limitation in these four areas is determined to be "mild," a plaintiff's

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities. See 20 C.F.R. § 416.920a(c)-(d).

Here, the ALJ found that Plaintiff's medically determinable impairments of depression and anxiety, "considered singly and in combination, do not cause more than minimal limitations in the [Plaintiff's] ability to perform basic mental work activities." AR 26.  The ALJ expressly found that Plaintiff had mild limitations in the functional areas of understanding, remembering, and applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. AR 26-27.  Specifically, the ALJ found that "throughout the record, upon mental status examination, [Plaintiff] was typically described as euthymic in mood, alert and oriented." AR 26.

Plaintiff contends that the ALJ failed to state specific legitimate reasons for rejecting Dr. Schielf's opinion of Plaintiff's mental functioning. (Doc. No. 17 at 9.) In assessing a claimant's Mental RFC, the ALJ may consider any statements provided by acceptable medical sources. *See* 20 C.F.R. §§ 404.1527, 416.927.  Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id*. Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id*. If the treating physician's opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id*.

On March 25, 2016, Dr. Schielf completed a mental residual functional capacity questionnaire. AR 538-39. Dr. Schielf opined that plaintiff had no limitation in his ability to remember work-like procedures, understand and remember short and simple instructions, carry out short and simple instructions, maintain regular attendance and be punctual within customary usually strict tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being overly distracted, make simple work related decisions, ask simple questions or

request assistance, accept instruction and respond appropriately to criticism from supervisors, get along with co-workers or peers without distraction, respond appropriately to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, understand and remember detailed instructions, carry out detailed instructions, set realistic goals and make plans independently of others, interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of cleanliness and neatness, travel in unfamiliar places, and use public transportation. AR 538-39. Plaintiff would be precluded from performing 10% of an eight-hour workday due to his ability to maintain attention for two-hour segments, perform at a consistent pace without an unreasonable number and length of rest periods, deal with normal work stress, and deal with stress of semiskilled and skilled work. AR 538-39. Plaintiff would be precluded from performing 15% of an eight-hour workday due to his ability to complete normal workday and workweek without interruptions from psychologically based symptoms. AR 538. Dr. Schielf also opined that Plaintiff would be absent from work about four days in a month due to his mental impairments. AR 539.

On December 23, 2016, Dr. Schielf completed a mental residual functional capacity questionnaire. AR 535-37. Dr. Schielf opined that Plaintiff's mental ability to remember locations and work-life procedures, and ability to understand and remember very short and simple instructions would preclude Plaintiff's performance about 5% of an eight-hour work. AR 535. And Plaintiff's ability to understand and remember detailed instructions would preclude performance for 10% of an eight-hour workday. AR 535. Dr. Schielf also opined that Plaintiff's mental ability to carry out short and simple instructions would not preclude work performance. AR 536. However, Plaintiff's ability to carry out detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances, and ability to make work related decisions would preclude Plaintiff's work performance 5% of the eight-hour workday. AR 536. Dr. Schielf also opined that Plaintiff's ability to sustain ordinary routine without special supervision would preclude Plaintiff's work performance 10% of an eight-hour workday. AR 536. Additionally, Dr. Schielf opined that Plaintiff's ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted, and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a

consistent pace without an unreasonable number and length of rest periods would preclude Plaintiff's work performance 15% of an eight-hour workday. AR 536. Dr. Schielf opined that Plaintiff could interact appropriately with the general public, ask simple questions or request assistance, and maintain socially acceptable behavior and could adhere to basic standards of neatness and cleanliness without limitations. AR 536. Plaintiff would be precluded 5% of the time from accepting instructions and responding appropriately to critics from supervisors and in getting along with co-workers or peers without distracting them or exhibiting behavioral extremes. AR 537. Dr. Schielf further opined that Plaintiff would be precluded 10% of the time from responding appropriately to changes at work and would be precluded 15% of the time from traveling in an unfamiliar place or using public transportation. AR 536. Finally. Dr. Schielf opined that Plaintiff would be absent from work 5 days or more per month due to his impairments, would be unable to complete eight-hour workday 5 days or more per month. AR 537.

During an examination on April 20, 2017, Plaintiff admitted to not taking his prescribed psychotropic medication on a daily basis. AR 647. During an examination on August 25, 2017, Dr. Schielf observed that Plaintiff was "not at all" feeling depressed, down, or hopeless and Plaintiff's depression screening was negative. AR 627.

The ALJ accorded the opinion of Dr. Schielf little weight as the overall record indicated that Plaintiff does not have any mental limitations. AR 27. Further, the ALJ determined that Dr. Schielf's opinion was inconsistent with his own treatment notes and with the Plaintiff's performance at the consultative examination where he was able to perform a simple three-step command. AR 27.

State agency consultants, Dr. Davis, Psy.D. and physician Garcia, M.D. found that Plaintiff's anxiety was non-severe. Dr. Davis opined that Plaintiff's anxiety and related disorders did not cause restriction of activities in daily living, nor difficulties in maintaining social function, concentration, persistence or pace. AR 134. Dr. Davis also noted that Plaintiff was not observed to have been in pain or distress during follow visits. AR 135. Dr. Garcia also opined that Plaintiff's anxiety and related disorders did not cause restriction of activities in daily living, nor difficulties in maintaining social function, concentration, persistence or pace. AR 150. Dr. Garcia also identified that Plaintiff was not

observed to be in pain or distress during follow up appointments. AR 151. The ALJ assigned these opinions significant weight as they are consistent with the medical evidence. AR 28.

Consultative examiner, Pauline Bonilla, Psy.D. opined that Plaintiff had mild impairments in his ability to perform simple and repetitive tasks. 9F. Plaintiff was mild to moderately impaired in his ability to perform detailed and complex tasks, interact with coworkers and the public and complete a normal workday or workweek without interruptions from psychiatric symptoms. AR 9F. Dr. Bonilla also opined that Plaintiff was able to complete his adaptive living skills independently, could perform chores and prepare meals, grocery shop, and run errands. 9F at 3. The ALJ accorded Dr. Bonilla's opinion discounted weight. AR 28. The ALJ found that Plaintiff has mild impairments, but that his impairments are controlled by medication. AR 28. The ALJ also found that the record echoed Dr. Bonilla's unremarkable clinical conclusions upon mental status examination, for example Plaintiff was described as alert and oriented. AR 28.

An ALJ may meet the burden of identifying specific and legitimate reasons for discounting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir.1986)) (superseded by statute on other grounds). When rejecting a medical opinion, the adjudicator is not required to recite specific words. *Magallanes*, 881 F.2d at 755 (reasoning that an incantation of magic words to reject physician's opinion is not required). The Ninth Circuit has held that a reviewing court can properly read the adjudicator's summary of the evidence and findings and draw specific and legitimate inferences therefrom. *Id*. ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.") That standard was met here. The Court is able to adequately determine the basis for the ALJ's decision and finds that the particular format that the ALJ utilized when discounting Dr. Schielf and Dr. Bonilla's opinions does not constitute reversible error.

Likewise, the ALJ's bases for discounting Dr. Schielf and Dr. Bonilla's opinions were not conclusory and boilerplate. "An ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion

11

is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). Here, in contrast, the ALJ set out a detailed and thorough summary of Dr. Schielf's and Dr. Bonilla's opinions and the conflicting clinical evidence, stated her interpretation thereof, and made findings. She did more than merely offer her conclusions or set forth boilerplate language. She identified her interpretations of the evidence and explained why they were correct. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

In this instance, the ALJ first discounted Dr. Schielf and Dr. Bonilla's opinions because the findings were inconsistent with the medical record and the record indicated that Plaintiff's impairments were controlled by medication. AR 26-28. An ALJ may discount a treating or examining physician's opinion when it is inconsistent with or unsupported by the medical evidence. See *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the ALJ properly rejected the opinion of a treating physician since it was not supported by treatment notes or objective medical findings); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (concluding that a contradiction between treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting treating physician's opinion); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (reasoning that "incongruity" between a doctor's questionnaire responses and her medical records provided specific and legitimate reason for rejecting doctor's opinion); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"). Accordingly, this was a specific and legitimate reason for discounting Dr. Schielf and Dr. Bonilla's opinions.

B. **The ALJ Properly Evaluated the Medical Evidence of Physical Residual Functional Capacity**

Plaintiff argues that the RFC assessment is unsupported by substantial evidence, because the ALJ rejected the assessment of Plaintiff's treating physician in favor of her own lay interpretation of the records. (Doc. No. 17 at 12.) Contrary to Plaintiff's contention, it is within the ALJ's province to

synthesize the medical evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (Beezer, C.J., dissenting) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti*, 533 F.3d at 1041-1042 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Therefore, it was appropriate for the ALJ to weigh the relevant evidence in determining that Dr. Schielf's opinion was "overrestrictive and appear[ed] to be primarily based on the [Plaintiff's] subjective report of symptoms rather than clinical findings, responses to treatment, and diagnostic testing." AR 31.

In arguing that the ALJ "play[ed] doctor," Plaintiff essentially sets forth his view of the medical evidence and asserts that this interpretation, rather than the ALJ's, is correct. However, the Court's scope of review of decisions granting or denying Social Security disability is limited. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979) (observing that Congress has mandated a very limited scope of judicial review of the Commissioner's decisions granting or denying Social Security disability benefits). The Court must consider the record as a whole, considering both the evidence that supports and the evidence that detracts from the Commissioner's decision; it is not the court's role to re-weigh the evidence or substitute its own judgment. *Winans v. Bowen*, 853 F.2d 643, 644–45 (9th Cir.1987). If there is conflicting evidence supporting a finding of either disability or non-disability, the ALJ may resolve the conflict so long as there is "more than one rational interpretation of the evidence." *Sprague*, 812 F.2d at 1230. Where evidence may support more than one rational interpretation, "the Court may not substitute its judgment for that of the Commissioner." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *see also Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

A review of the record reveals that there is substantial evidence supporting the ALJ's finding that the relevant medical evidence is inconsistent with the severity of the limitations set forth in Dr. Schielf's opinion. *See also Richardson*, 402 U.S. at 401 (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). While treatment records reflect some limitations, they do not contain any findings substantiating Dr. Schlief's opinion that, as of December 23, 2016, Plaintiff was only able to walk one city block without rest or sever pain, could sit for 30 minutes at one time, could stand for 20 minutes at one time, could sit and stand/walk for less than two hours in an eight-hour workday, requires a job that permits shifting positions from sitting to standing to walking, required periods of walking every 30 minutes for 10 minutes during an eight-hour workday, would need unscheduled breaks every 30 minutes for 10 minutes during a workday, never lift more than 20 pounds, rarely lift 10 pounds, and occasionally lift less than 10 pounds, could never, climb ladders, could rarely stoop, crouch/squat and climb stairs, occasionally twist, could only use his hands, fingers, and reach in front of body 50% of an eight-hour workday, could only reach overhead for 25% of an eight-hour workday, would be off-task 25% or more of a day due to impairments, and would be absent from work four or more days a month. AR 540-543.

In fact, the other medical opinions in the record do not support the overrestrictions opined by Dr. Schief. For example, State agency consultative examiners Dr. Nasrabadi and Dr. Rush both opined that Plaintiff could engage in light work, could frequently handle and finger, could occasionally crawl, stoop, balance, and climb, could frequently kneel and crouch. AR 1A, 2A, 5A, ND 6A. The ALJ assigned these opinions significant weight as they were consistent with the medical evidence. AR 30. Further, Plaintiff's own testimony does not support the restrictions stated in Dr. Schielf's opinion. Plaintiff testified that he is only able to walk a block or two, which usually takes him about an hour and a half, is able to stand for about 30 minutes without a sitting or taking a break, is able to sit for about 45 minutes at a time, is able to grab things no higher than eye level off the shelves and that weigh no more than 20 pounds. AR 103-04.

Although Plaintiff may disagree with the ALJ's assessment of the evidence, the ALJ in this case properly discharged her responsibilities of determining credibility and resolving any conflicts or

14

ambiguities in the evidence. Her interpretation of the evidence is rational therefore must be upheld. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citation omitted); *Morgan*, 169 F.3d at 600 ("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.") (citation omitted). Plaintiff also fails to explain how his interpretation of the evidence he cites in his brief supports the degree of limitations opined by Dr. Schielf even though the burden is on the claimant to establish disability. *Terry*, 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). Considering the record as a whole and weighing both the evidence and supports and detracts from the ALJ's conclusion, the Court considers the ALJ's finding that Dr. Schielf's opinion is inconsistent with the medical record to be supported by substantial evidence.

The ALJ further discounted Dr. Schielf's opinion because it was "not well correlated with the treatment notes…which document treatment consisting largely if not entirely of pain management consisting of Vicodin and Norco to which he has no adverse effect, and which controlled his symptoms, so he is functional; periods of no joint or muscle pain." AR 31. *See Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]").

Having reviewed the record, the Court finds that the ALJ's interpretation of the evidence was reasonable and supported by substantial evidence.

///
///
///
///
///
///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Sam Quintana.

IT IS SO ORDERED.

Dated: __March 24, 2021__              /s/ *Barbara A. McAuliffe*
                                                      UNITED STATES MAGISTRATE JUDGE